

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| KENNETH B. LOVELESS, | § § | Civil Action No. 3:23-2001-MGL |
| Plaintiff, | § § | |
| vs. | § § | |
| EDWARD K. WHITE, MICHAEL MONTGOMERY, MICHAEL CATES, AND FLORA E. "BETH" HUTCHINSON, | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

In his amended complaint filed October 25, 2023, Plaintiff Kenneth B. Loveless ("Plaintiff") asserts a federal cause of action under 42 U.S.C. § 1983, alleging retaliation for exercising his First Amendment rights.  Plaintiff also asserts state law causes of action for conspiracy and outrage against Defendants Edward K. White ("White"), Michael Montgomery ("Montgomery"), Michael Cates ("Cates"), and Flora E. "Beth" Hutchinson ("Hutchinson") (collectively, "Defendants").  In addition, Plaintiff raises a state law cause of action for abuse of process against Cates. Am. Compl., ECF No. 40.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff states he is an experienced, licensed contractor who has operated a successful commercial contracting business in South Carolina for nearly forty years. Plaintiff served on the School Board of Trustees (the "Board") for School District Five for Lexington and Richland Counties, South Carolina ("District Five"), from November 2018 to November 2022. During his tenure, Plaintiff criticized practices and procedures being used by private contractors for District Five. Plaintiff contended Defendants accepted bids based on relationships and financial favors that occurred between Defendants and the contractors. Specifically, Plaintiff states he

> point[ed] out issues of great concern regarding the ongoing construction of a public school being built for District Five in multiple public meetings and contact to District officials. On information and belief, Defendants would not have conspired against or retaliated against Plaintiff had he remained silent as to the inadequate and questionable construction techniques and finance methods being used during the construction of Elementary School 13 which led to a less than optimal product being delivered to District Five.

ECF No. 40 at 10.

According to Plaintiff,

> 22. As a Board member, Plaintiff attempted to discuss the issues brought to his attention by district residents with District Five's consultant Neal, but Neal, acting in furtherance of the conspiracy which unfolded, insisted Plaintiff was required to take his concerns to the Superintendent of District Five, who was then Christina Melton (and whose contract of employment allowed her to insulate the Board from many things[)].
>
> 23. On March 24, 2020, Plaintiff delivered a notebook containing a letter and multiple exhibits (construction standards, building codes, etc.) which set forth in detail his concerns about the processes and procedures he believed were occurring that may be violative of the contract documents, applicable building codes and construction standards for commercial buildings. Plaintiff's notebook included tabbed sections with copies of the relevant contract documents, codes and standards, to make it relatively easy for a non-professional to understand the concerns he was bringing to District Five's attention. He anticipated Melton would properly bring his concerns to the Board's attention. Instead, Melton seized the opportunity to perpetuate

>    the District's already-demonstrated animus of Plaintiff. Melton's actions led to the Defendants' retaliation against Plaintiff by enlisting Montgomery and White to discredit Plaintiff's concerns which led to Plaintiff's public trial on September 14, 2020 during a School Board meeting which was an official meeting.
>
> 24.  Melton tasked Defendant Montgomery, who was eagerly joined by Defendant White (then a sitting school board member), Defendant Cates (then the Chairman of the District Five Board of Trustees), Defendant Beth Hutchinson (Vice chair District Five Board of Trustees[)] and others, in the conspiracy to scheme with White and Montgomery and further conspire to execute a retaliatory attack against Plaintiff solely for having exercised his First Amendment rights to speak publicly about issues in the public interest, with an intent to punish Plaintiff for exercising his First Amendment Rights, and to work with other third parties not named as Defendants herein to manufacture and publish false statements about Plaintiff, his backgrounds and his ethics, cause his credibility to be questioned, and to try to seek to remove him from the Board as punishment for daring question using his public voice the processes and procedures that were being used by Contract Construction, Inc. and the architect on the job, Quackenbush Architects to unfortunately build a less than optimal product for District Five.

*Id.* at 23-24.

Plaintiff alleges White, who served multiple terms on the Board, was "a leader among the conspirators, collaborators and accomplices who organized, executed and continue the conspiracy to commit unlawful retaliation against Plaintiff which was a substantially motivated by Defendants' desire to punish Plaintiff for exercising his First Amendment Rights." *Id.* at 5. Montgomery was employed by District Five as an attorney and was paid for his work, "including his actions in conspiring, coordinating and executing the retaliatory attacks against Plaintiff, while being compensated using public funds of District Five." *Id.* at 7. According to Plaintiff, Montgomery's conduct made him a state actor for purposes of § 1983. Plaintiff states Cates served as Chairman of the Board during the planning and execution of the retaliatory attacks against Plaintiff. Finally, Plaintiff states Hutchinson served as vice-chair of the Board. Plaintiff states, "It is unclear what her motives are for conspiring and retaliating against Plaintiff, but there is no doubt she did so in

conjunction with White and Montgomery." *Id.* at 9.

Plaintiff alleges White launched a retaliatory attack against Plaintiff at the September 14, 2020 Board meeting. White asked Greg Hughes ("Hughes"), a part-owner of Contract Construction, Inc. ("Contract Construction"), whether Plaintiff had any business relationship with Contract Construction. Hughes responded affirmatively and noted their companies were working together on a construction project. According to Plaintiff, "What followed was a dog and pony show with Defendant White observing, as if he had just discovered it, 'So Mr. Loveless is actually as a seated board member bidding on a contract with your company and you're a vendor of the district. And then he was awarded a contract to work for you?'" *Id.* at 49. Plaintiff alleges White led the retaliatory attack on Plaintiff for several hours, "questioning Plaintiff's professional credentials, judgment, motives, and asking questions about Plaintiff, ending with a direct accusation by White against Plaintiff that '[y]our status as a board member is a level of influence and you've actually turned it around . . . It appears to me that you're acquiring influence for you by your status. . . And I see it as putting you in a position of influence. . . and it appears to me that you're turning your board seat into a money-making enterprise for your own company.'" *Id.* at 50.

Plaintiff states White, Hutchison, and others issued a press release claiming Plaintiff's construction company was a subcontractor to Contract Construction with respect to an unrelated project. White and Hutchinson alleged in the press release Plaintiff had enriched himself while serving on the Board. Plaintiff alleges other members of the Board as well as parents with children enrolled in District Five schools acted in concert with Defendants to retaliate against Plaintiff, even after Montgomery and White resigned from the Board. Plaintiff contends the "retaliatory attack" at the Board meeting on September 14, 2020 "led to Plaintiff losing his bid for re-election to the Board in November [] 2022." *Id.* at 52. Plaintiff further states he is shunned in a community where "he

was once admired and sought after as a leader and a person knowledgeable in many areas." *Id.* Plaintiff submits he engaged in constitutionally protected speech by sending a letter raising his concerns regarding the construction of Elementary School 13, which was his obligation in order to carry out his duties to his constituents. *Id.* Defendants' actions, according to Plaintiff, were for the purpose of favoring certain building contractors over others, and otherwise avoiding the requirements under the applicable procurement codes and using insiders to ensure favored contractors were chosen, supposedly by the School Board. *Id.* at 3.

Pending before the Court is Defendants' motion to dismiss for lack of standing and for failure to state a claim, filed October 31, 2023. Mot. to Dismiss Pl.'s Am. Compl., ECF No. 41. Plaintiff filed a response in opposition on November 14, 2023, ECF No. 44, and a supplement on November 20, 2023, ECF No. 52. Defendants filed a reply on November 21, 2023. ECF No. 50.

On April 9, 2024, the Court asked for clarification of an issue raised in Defendants' motion to dismiss. Defendants replied to the Court's inquiry on April 10, 2024. ECF No. 61. Plaintiff filed a surreply to Defendants' reply on April 19, 2024. ECF No. 62. Having carefully considered the motions, the response, the reply, the record, and the applicable law, it is the judgment of the Court Plaintiff's § 1983 cause of action be dismissed for lack of standing. The federal cause of action having been resolved, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c).

### III.  LEGAL STANDARDS

**A.     Claims Brought Under 42 U.S.C. § 1983**

Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws" of the United States. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In South Carolina, school districts, school superintendents, and school board members are arms of the state school system and, as such, are not subject to monetary damages suits, except for those actions that may be brought under South Carolina's Tort Claims Act. *Stewart v. Laurens Cnty. School Dist. No. 55*, No. 6-92-1603-3, 1992 WL 12014673, at *5 (D.S.C. Oct. 2, 1992) (citing S.C. Code Ann. §§ 15-78-10, et seq.). However, state officials sued in their personal or individual capacities are "persons" within the meaning of § 1983 and in the proper case may be liable for money damages. *Id.* at *7 (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

**B.     Standing**

A defendant may bring a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1). To establish standing, a plaintiff must demonstrate he has (1) suffered an injury-in-fact, (2) caused by the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 339. Moreover, "[t]o satisfy standing's causation requirement, the alleged injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (internal alterations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). "At the motion-to-dismiss stage, this burden is relatively modest[.]" *Id.* (internal quotation marks omitted). Finally, the redressability prong is satisfied if "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable

6

decision." *Lujan*, 504 U.S. at 562 (internal quotation marks omitted).

**C.     First Amendment Retaliation**

The First Amendment's Free Speech Clause guarantees both "the affirmative right to speak" and the concomitant "right to be free from retaliation by a public official for the exercise of that right." *Bhattacharya v. Murray*, 93 F.4th 675, 688 (4th Cir. 2024)(quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). "A plaintiff claiming First Amendment retaliation must demonstrate that: '(1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct.'" *Id.* at 689 (quoting *Davison v. Rose*, 19 F.4th 626, 636 (4th Cir. 2021)).

## IV.  DISCUSSION

**A.     Standing.**

The rigid Article III standing requirements are "'somewhat relaxed in First Amendment cases'" and "'[t]he leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact.'" *Webb v. Paine*, 515 F. Supp. 3d 466, 481 (S.D.W. Va. 2021)(quoting *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013)). In First Amendment cases, "'the injury-in-fact element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising h[is] right to free expression.'" *Id.* (quoting *Cooksey*, 721 F.3d at 235).

Defendants submit Plaintiff cannot show he suffered an injury-in-fact that is causally related to any act of any Defendant. In support of their argument, Defendants rely on *Habecker v. Town of Estes Park*, 518 F.3d 1217 (10th Cir. 1217). In *Habecker*, the plaintiff was a self-described atheist who was elected in 2000 to fill the seat of a deceased Trustee of the Town Board of Trustees.

7

The plaintiff was re-elected to a full four-year term in 2002. In May 2004, the Town mayor began asking all present to stand for the pledge of allegiance. The plaintiff stood, but refused to recite the words "under God." Eventually the plaintiff sat silently through the recitation of the pledge of allegiance after explaining his objection to the term "under God" to the other members of Town Board of Trustees. *Id.* at 1221.

Three citizens learned of the plaintiff's position and formed a committee to recall the plaintiff. The Board accepted the petition and set a recall election for March 22, 2005. The plaintiff was recalled as Trustee. The plaintiff blamed his stance on the pledge as the reason for his loss. *Id.* at 1222. The plaintiff brought a suit, seeking, among other things, reinstatement of his seat on the Board and monetary damages in terms of salary and expenses.

The district judge entered summary judgment in favor of the defendant for lack of standing. On appeal, the Court of Appeals for the Tenth Circuit determined the plaintiff's "removal from office is a concrete and particularized harm, in that he is no longer able to enjoy the benefits of his former position." *Id.* at 1224 (citing cases). However, the Tenth Circuit also found the plaintiff did not show his injury was caused by the actions of the defendants. Even though the plaintiff asserted his injury could be traced to the actions of the defendants, the Tenth Circuit found "'speculative inferences [were] necessary to connect [the plaintiff's] injury to the challenged action[.]'" *Id.* at 1225 (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005)). The Tenth Circuit also noted causation may be lacking when "'the independent action of some third party not before the court'" was the direct cause of a plaintiff's harm. The Tenth Circuit held the votes cast by voters of the Town led to the plaintiff's ouster, and the reason why each voter cast his or her vote was "a purely private matter." *Id.* Because the Tenth Circuit could not "presume that the voters' decision to recall [the plaintiff] was connected to his position on the Pledge or to his religious beliefs, this

8

decision breaks the chain of causation between the Pledge controversy and [the plaintiff's] electoral loss." *Id.* at 1226.

To distinguish *Habecker*, Plaintiff denies he is claiming the loss of the election as an injury-in-fact to himself. Plaintiff claims the "loss of the election is merely a piece of evidence of the broader damages Defendants intended to and have caused to" Plaintiff. Resp. to Def.'s Mot. to Dismiss Am. Compl., ECF No. 44 at 3. Plaintiff submits he has been subjected to public ridicule, humiliation, and false and defamatory statements as a result of Defendants' retaliation. Plaintiff asserts he was the topic of numerous Facebook postings and news stories where falsehoods regarding Plaintiff's honesty, ethics, and character stemmed directly from the attack during the School Board meeting. *Id.* at 4. He also contends a complaint was filed with the State Ethics Commission grounded on the allegations raised by Defendants in the September 14, 2020 meeting. Plaintiff asserts the damage to his personal reputation ultimately led to his losing his re-election bid in 2022. Plaintiff contends his injuries are redressable by a favorable court decision; that is, a favorable decision would restore his reputation within the community and reverse the ostracism he has endured.

Plaintiff's framing of his injury-in-fact suffers from the same deficiencies discussed by the Tenth Circuit in *Habecker*. Construing the facts in favor of Plaintiff, the Court will assume Defendants conspired to retaliate against Plaintiff for criticizing construction practices. Plaintiff testified in his deposition White "wasn't enamored with the fact that I was asking questions, I can tell you that." Deposition of Kenneth B. Loveless, ECF No. 52-1 at 5. According to Plaintiff's deposition testimony,

> Q. You said that [White] tried to get you run off the school board –
> A. That's right.

> . . . .
>
> Q. Okay. What were the reasons that Ed White gave that you – that he said you ought to be run off the school board?
>
> A. The – this – he was trying to build a case, an ethics case against me, and he was going to use that to run me off the school board.
>
> Q. Okay. What was he saying you had done that constituted an ethical problem?
>
> A. He said that I was opposed to the construction of Piney Woods Elementary, and that's not true. He said that, that – that I had used my position as a spring board to – or something to that affect, to try to make money for my business, that – that I had – that I had lied, that I had – I couldn't be trusted. He said that I had ethics violations. He said that, you know, that I was unworthy of being on the school board.
>
> Q. All right. Was he the only person who said things like that about you?
>
> A. No. No.
>
> Q. Who else?
>
> A. Beth Hutchison.

*Id.* at 6-7.

Plaintiff charges emails were exchanged among White and others that resulted in false information being placed in newspapers and on social media. In particular, Plaintiff complains Kevin Scully, a parent in District Five, denigrated Plaintiff on social media and in public by claiming to be a victim who had been sued by Plaintiff. Plaintiff asserts Scully benefitted from the controversy by using Plaintiff as a stepping stone to get elected to the Board. *Id.* at 9. Plaintiff contends he was shunned from participating in professional and philanthropic events because of Scully's pronouncements.

> Q. Okay. Do you have any evidence that the reason that you haven't gotten those invitations is because of some statement that Kevin Scully made about you?

10

> A.  Yeah. I mean, I think so. I mean, I think there are. And I think that he's – he knows there are. Because this innuendo and all that being fed – and he even, in school board meetings, after he was on the board even, you know, reflecting on things like that. But yeah, I mean, we – I was the ex-officio member. And while I was on the board of the foundation, of the D5 Foundation. And they called me up and said you can't do this anymore because you have a conflict of interest, because you have these lawsuits and so forth. I mean, they didn't want me. I was not included in that, in there. The Chapin community theater hasn't asked me for anything, to even be a part of it even though I gave them 75 – $25,000 last year. You know, they didn't call me up and say come down here for our grand opening or anything like that. I was – SkillsUSA. I raised them – this is at the CATE Center, or the Center for Excellence, for Technological Excellence, or whatever the name of it is at the school district. I raised the SkillsUSA, within a matter of five minutes, I raised them $15,000 from contractors to be able to send them to competitions. When I went to – the next year, tried to – you know, nobody contacted me. Nobody wanted me involved. Nobody, you know – the Chapin ALA, which is the – for the gifted and talented kids, I was one of the judges for them for years over there, judging their competitions. They haven t called me since then. I mean, since all this [alleged ethics violations] come out.

*Id.* at 17-18.

Even if what Plaintiff states is true, the facts involving Scully have no relation to this case. There is no evidence Scully acted in concert with Defendants. There is no evidence Scully was the cause of Plaintiff's alleged exclusion from these professional and charitable activities, other than Plaintiff's unconvincing attempts to correlate facts, time lines, and suppositions.

There further is no evidence Plaintiff experienced a need to self-censor. In fact, in his amended complaint, Plaintiff discounts the effect of Defendants' actions:

> Only time will tell if Plaintiff's professional reputation has been damaged to any significant degree as a result of the cabal which planned and launched the retaliatory attacks against Plaintiff, which continue to this day. The outstanding quality of work done by Plaintiff's commercial contracting business speaks for decades and made Plaintiff's company one of outstanding reputation and it is hoped that the reputational damage effected by Defendants and others is limited to unsophisticated and minimally competent individuals who think social media is a real world, some of whom appear to have difficulty differentiating between what is on social media and reality.

ECF No. 40 at 8, n.9.

Because Plaintiff is unable to meet the injury-in-fact element of his first amendment claim, the Court declines to address the parties' remaining arguments here. *See Schilling v. Schwitzer-Cummins Co.*, 142 F.2d 82, 84 (D.C. Cir. 1944) (The Court is "not require[d] or encourage[d] . . . to assert the negative of each rejected contention as well as the affirmative of those which [it] find[s] to be correct."). The Court will thus grant Defendants' motion to dismiss Plaintiff's § 1983 claim for lack of standing.

**B.     Remaining Causes of Action**

The Court declines to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3), which provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction[.]" The remaining state-law claims in this case assert conspiracy, outrage, and abuse of process (against Cates only). Pursuant to § 1367(d), the period of limitations for these remaining claims shall be tolled while the claims are pending and for a period of 30 days after they are dismissed, unless State law provides for a longer tolling period.

It is the intent of this Court that factual findings and legal conclusions made with respect to the federal question addressed in this case should not be construed as applicable to Plaintiff's state law claims. The Court expresses no opinion as to the merits of the state law causes of action.

**V.  CONCLUSION**

For the reasons stated above, it is the judgment of the Court Defendants' motion to dismiss for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED**, with prejudice. Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) is **DENIED**, without prejudice. In accordance with 28 U.S.C. § 1367(c)(3), the Court declines to

exercise jurisdiction over Plaintiff's state law claims for conspiracy, outrage, and abuse of process, and dismisses the state law claims without prejudice.  Plaintiff may refile the state law claims in state court in accordance with the time limitations set forth in § 1367(d).

**IT IS SO ORDERED**.

Signed this 20th day of September, 2024, in Columbia, South Carolina.


                                  s/Mary Geiger Lewis
                                  MARY GEIGER LEWIS
                                  UNITED STATES DISTRICT JUDGE